UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

Nº 14-CV-2664 (JFB)(AKT)

———————————————

CAROLEE MORROW AND THE GROW INSURANCE AGENCY CORP.,

Plaintiffs,

VERSUS

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, ET AL.,

Defendants.

———————————————

**MEMORANDUM AND ORDER**
September 16, 2014

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Carolee Morrow ("Morrow") and The Grow Insurance Agency Corp. ("Grow Insurance") (collectively, "plaintiffs") commenced this action in the Supreme Court of the State of New York, Nassau County, seeking a declaratory judgment and damages stemming from Morrow's attempt to acquire her former employer's Nationwide Insurance business from defendants Nationwide Mutual Fire Insurance Company, Nationwide Mutual Insurance Company, and Nationwide Financial General Agency, Inc. (collectively, "Nationwide"). This lawsuit concerns the events surrounding that failed purchase, including the enforceability of a Nationwide Advantage Program Independent Contract Exclusive Agent Master Agreement (the "Agent Agreement") executed between Morrow and Nationwide.

Defendants removed on the basis of diversity jurisdiction on April 28, 2014, arguing that defendants Kimberly Carmichael ("Carmichael") and James Funaro ("Funaro") (collectively with Nationwide, "defendants")—both New York citizens—were fraudulently joined. Pending before the Court are (1) plaintiffs' motion to remand for lack of diversity jurisdiction; and (2) defendants' motion to transfer venue and/or dismiss or stay pending arbitration. With respect to the jurisdictional issue, it is undisputed that, if either individual defendant is properly named in this action, the Court has no jurisdiction and remand is required because both plaintiffs and the individual defendants are New York citizens for jurisdictional purposes. Thus, the question is whether removal is proper because plaintiffs fraudulently joined Carmichael, Funaro, or both to the lawsuit. For the reasons that follow, the Court concludes that defendants have failed to meet their burden of demonstrating fraudulent joinder with respect to Funaro, and, thus, this Court lacks subject matter

jurisdiction.[1] Accordingly, the Court must remand the action to state court pursuant to 28 U.S.C. § 1447(c).

I. BACKGROUND

A. Factual Background

On March 25, 2014, plaintiffs filed this lawsuit in the Supreme Court of the State of New York, County of Nassau against Carmichael and Funaro, who are New York citizens, and Nationwide.

According to the complaint, Morrow is a licensed insurance agent who was employed by the Bernich Agency (the "Agency") prior to March 31, 2013. (Complaint ¶¶ 15–16.) The Agency had a substantial book of business with Nationwide (the "Nationwide Sales"). (*Id.* ¶ 18.) At one point, the Agency sold products requiring Series 6 and 63 licensing and registration with FINRA, but, at some time before April 2013, Nationwide stopped the Agency from selling such products. (*Id.* ¶¶ 19–20.) Plaintiffs allege that Nationwide's agents told Morrow she would be able to acquire the Agency's Nationwide Sales effective April 1, 2013. (*Id.* ¶ 22.) Relying on those representations, Morrow arranged for a new lease to the premises where the Agency was located and began servicing the broker business. (*Id.* ¶¶ 23–24.) Because plaintiffs did not have a written agreement with Nationwide at that time, they serviced the entire broker business from April 1 through June 30, 2013, through a different Nationwide agent, which received the payments for the commission from Nationwide and forwarded them to plaintiffs. (*Id.* ¶ 24.)

According to plaintiffs, between April 1 and June 14, 2013, they received reassurances that they would get a new contract from Nationwide confirming their acquisition of the Nationwide Sales. (*Id.* ¶ 25.) Apparently, a proposed contract was sent to Morrow via email on June 14, 2013, but she mistakenly deleted it and only saw it during a telephone call with Nationwide on June 17, 2013. (*Id.* ¶¶ 26–27, 35.) Morrow allegedly was told she had to sign the contract by June 18, 2013, or else she would lose the opportunity to take over the business. (*Id.* ¶ 36.) Morrow "signed the Agreement because she did not want to lose the Bernich Agency Nationwide Sales that she was promised," even though she claims she did not have the time to read it through or have an attorney review it. (*Id.* ¶¶ 37–38.)

According to Morrow, pursuant to the contract's terms, she had to acquire Series 6 and 63 licenses within six months of the execution of the contract. (*Id.* ¶ 40.) When she failed to do so, she was told her contract would be terminated and that she would be given thirty days' notice of the termination. (*Id.* ¶ 41.) Morrow further claims her contract was summarily and immediately terminated without the requisite notice on February 18, 2014. (*Id.* ¶ 42.) According to a letter from Nationwide, it canceled the Agent Agreement because Morrow failed to pass the Series 6 and 63 examinations within 180 days of the Agent Agreement's effective date. (*Id.* ¶ 43.) Nationwide also noted that it or Morrow could terminate the contract at any time, with or without cause. (*Id.*) Morrow alleges that the cancellation was a subterfuge in an attempt to confiscate her Nationwide insurance business and turn it over to Funaro. (*Id.* ¶ 43.) She also claims that Nationwide's district sales manager told her that her sales would be given to Funaro, with no compensation. (*Id.* ¶ 44.)

In the complaint, plaintiffs contend that "[d]efendants' scheme was to sell the franchise to unwitting insurance [salesmen] on onerous terms that enabled Defendants to

---

[1] Given this ruling, the Court need not address whether Carmichael was fraudulently joined.

take back the franchise at any time and without reason." (*Id.* ¶ 4.) "At the same time, Defendants would reap the benefits of purchaser's agency to generate profits solely for them while the purchasers undertook all the obligations and incurred all the expenses and were falsely led to believe they had acquired a valuable asset." (*Id.*)

B. Procedural Background

Plaintiffs filed the complaint in the Supreme Court of the State of New York on March 25, 2014. Defendants removed to this Court on April 28, 2014. Defendants filed their motion on May 5, 2014. Plaintiffs filed their motion to remand and their opposition to defendants' motion on June 16, 2014. Defendants filed their opposition to plaintiffs' motion, and their reply in support of their motion, on July 16, 2014. Plaintiffs filed their reply in support of their motion to remand on August 1, 2014. The Court heard oral argument on September 10, 2014. The matter is fully submitted.

II. STANDARD OF REVIEW

A. Motion to Remand

Generally, a case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)); *see also* 28 U.S.C. § 1441. If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (internal quotation marks and citations omitted). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991)); *accord Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367–68 (S.D.N.Y. 2006).

B. Diversity Jurisdiction

It is axiomatic that federal courts only have diversity jurisdiction when there is complete diversity between the parties—that is, when all plaintiffs are citizens of different states from all defendants. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998). In other words, if any plaintiff shares citizenship of the same state as any defendant, complete diversity does not exist, and diversity jurisdiction is lacking. However, as the Second Circuit has made clear, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998). Furthermore, in order for there to be diversity jurisdiction, the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a).

In analyzing whether subject matter jurisdiction exists, the Court is permitted to look to materials outside of the pleadings. *See Bldg. & Constr. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev.,*

3

*Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) ("Although [the district court's] ruling required [it] to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction." (citing *Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002))); *see also Pampillonia*, 138 F.3d at 461–62 (looking to affidavits on removal petition to determine whether party had been fraudulently joined). "Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (citing *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957) (looking to information contained in affidavits submitted in support of a motion to remand to determine removability); *Oglesby v. RCA Corp.*, 752 F.2d 272, 278 (7th Cir. 1985) (holding it was proper for the district court to look to a motion to remand and removal petition to determine removability)).

### III. DISCUSSION

Plaintiffs argue that this case should be remanded because they, along with Funaro, are citizens of New York, destroying diversity jurisdiction. Plaintiffs argue that defendants have not demonstrated by clear and convincing evidence that plaintiffs cannot state a cause of action against Funaro, and that defendants incorrectly stated in their Notice of Removal that the key inquiry is whether Funaro is a necessary party under state law. In support of that proposition, defendants rely on *CMS Volkswagen Holdings, LLC v. Volkswagen Group of America, Inc.*, No. 13-CV-03929 (NSR), 2013 WL 6409487 (S.D.N.Y. Dec. 6, 2013), which interpreted the undersigned's decision in *Audi of Smithtown, Inc. v. Volkswagen of America, Inc.*, No. 08-CV-1773 (JFB)(AKT), 2009 WL 385541 (E.D.N.Y. Feb. 11, 2009). Although the Court shall clarify the appropriate standard of review below, the Court notes that, at oral argument, counsel for defendants correctly focused on the sufficiency of the allegations against Funaro, instead of pressing the incorrect argument that he must be a necessary party in order to avoid a finding of fraudulent joinder. As set forth below, the Court concludes that remand is warranted because Funaro was not fraudulently joined.

### A. *Audi*'s Holding

In *Audi*, this Court explained that, "'to show that naming a non-diverse defendant is a fraudulent joinder effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.'" 2009 WL 385541, at *3 (quoting *Pampillonia*, 138 F.3d at 461). Audi had argued that *Pampillonia* mandates that a cause of action must exist against the non-diverse defendant in order for it to be considered for diversity purposes. The Court disagreed and concluded "that there is no absolute requirement that a party have a separate cause of action against it." *Id.* at *4. The Court explained that "*Pampillonia* should not be read to stand for the proposition that the existence of a 'cause of action' is the <u>sole</u> basis upon which a defendant can properly be considered for diversity of jurisdiction purposes. Instead, a necessary or indispensable party to a lawsuit, even where no specific cause of action is asserted against it, should be considered for diversity of jurisdiction purposes if it is a real party to the controversy." *Id.* (emphasis added). Thus, the Court held that "if a party is not simply a

4

nominal or formal party but is named because it is a necessary party under state law that has interests that will be directly affected by the adjudication of the lawsuit, then such party is properly considered for purposes of diversity jurisdiction, even if there is no specific cause of action asserted against that party." *Id.*

*Audi* does not stand for the proposition that the only inquiry to determine whether fraudulent joinder occurred is whether the defendant at issue is a necessary party under state law. To the extent defendants and the decision in *CMS Volkswagen* construe *Audi* to that effect, the Court disagrees. Under the interpretation pressed by defendants in their written submissions to this Court, any non-diverse defendants who are sued in state court on claims that are cognizable causes of action could be disregarded for purposes of diversity jurisdiction if such defendants are not necessary parties. There is absolutely no legal support for that position, and the Court rejects that argument. Such defendants may have a "real connection with the controversy," and a plaintiff may have asserted a viable cause of action against them, even if they are not necessary parties under New York law.

### B. The Claim Against Funaro

In the instant case, plaintiffs allege a specific claim against Funaro, a non-diverse defendant. Plaintiffs do not claim that Funaro is a "necessary party." Thus, the question is whether "there is no possibility, based on the pleadings, that [plaintiffs] can state a cause of action against [Funaro] in state court." *Pampillonia*, 138 F.3d at 461. As Judge Cogan has correctly summarized:

> On [that] ground, joinder will be considered fraudulent when it is established that there can be no recovery against the forum defendant under the law of the state on the cause alleged. The defendants' burden in establishing fraudulent joinder is greater than on a motion to dismiss for failure to state a claim. [That is, it is not sufficient to argue simply that the complaint fails to state a claim against that defendant; rather, the removing party must satisfy the clear and convincing standard set forth in *Pampillonia*.] While the plaintiffs' pleadings must contain sufficient factual foundations to support any allegations against the forum defendant, there is no requirement that plaintiffs' recovery in state court be reasonably likely. Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted. The court may look beyond the pleadings and consider evidence submitted by the parties, and must resolve all factual and legal issues in favor of the plaintiff.

*Sleight v. Ford Motor Co.*, No. 10 Civ. 3629(BMC), 2010 WL 3528533, at *2 (E.D.N.Y. Sept. 3, 2010) (internal quotation marks, alterations, and citations omitted); *accord Audi*, 2009 WL 385541, at *3 (setting forth standard).

Plaintiffs allege that Funaro tortiously interfered with plaintiffs' business relationship with Nationwide. Under New York law, to bring a claim for tortious interference with business relations, a plaintiff must allege: (1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of the relationship, intentionally interfered with it; (3) the defendant acted with the sole purpose of harming the plaintiff, or used dishonest, unfair, or improper (wrongful) means; and (4) the relationship was injured. *E.g.*,

5

*Balance Point Divorce Funding, LLC v. Scrantom*, 978 F. Supp. 2d 341, 351 (S.D.N.Y. 2013); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (same). The defendant must have acted with more than economic self-interest or other economic considerations. *See, e.g.*, *Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*, 878 N.Y.S.2d 432, 433 (N.Y. App. Div. 2009) (dismissing tortious interference with prospective business relations claim because plaintiffs did not plead that any defendants were "motivated solely by malice or to inflict injury by unlawful means, beyond mere self interest or other economic considerations"); *Nassau Diagnostic Imaging & Radiation Oncology Assocs., P.C. v. Winthrop-Univ. Hosp.*, 602 N.Y.S.2d 650, 650 (N.Y. App. Div. 1993) (where defendants' actions were motivated by economic self-interest, concluding that actions were not malicious and that conclusory allegations that defendants acted maliciously and in bad faith were insufficient to defeat summary judgment).

In their removal petition, defendants argued that Funaro should be disregarded for purposes of diversity jurisdiction because (1) Nationwide's alleged intent to hand over the Agency to Funaro is irrelevant, and (2) the only allegation against Funaro is that he wanted to buy the Agency from plaintiffs despite knowing about the alleged Agency Agreement with Nationwide. (Removal Petition ¶¶ 30–31.) In addition, in their memorandum in opposition and at oral argument, defendants stressed that plaintiffs had failed to allege any causation or damages from Funaro's acts (assuming *arguendo* they were intentional and wrongful). According to defendants, Nationwide canceled the agreement because of plaintiffs' failure to complete the Series 6 and 63 examinations, not because of Funaro's actions. In light of plaintiffs' allegations and theories asserted in the complaint and at oral argument, the Court finds that defendants have failed to carry their burden of showing, by clear and convincing evidence, that there is "no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Audi*, 2009 WL 385541, at *3.

Plaintiffs allege that Funaro attempted to acquire the Nationwide Sales despite knowing about the supposed Agent Agreement, damaging plaintiffs in a sum not less than $10,000,000, and that Nationwide terminated the Agreement as subterfuge in an attempt to turn over the business to Funaro. (Complaint ¶¶ 43, 60.) Thus, plaintiffs have alleged the existence of an agreement, which Funaro knew about; that he knowingly attempted to and did acquire the business (an affirmative act); and that his actions injured plaintiffs. At oral argument, the Court asked defendants what else plaintiffs should have to plead to state a viable claim against Funaro. (Oral Arg., at 1:38–1:40.) Counsel focused on causation and damages, stating that, assuming the other elements were pleaded, "the key element is damages" and Morrow's failure to pass the Series 6 and 63 examinations. Plaintiffs' counsel responded that plaintiffs pleaded damages of $10 million. He also asserted that plaintiffs were injured even before the Agreement was terminated, because Funaro was wrongfully planning, with Nationwide, to acquire plaintiffs' business from the beginning, and that this scheme caused plaintiff to expend and ultimately lose money. (*See* Oral Arg. at 1:47–1:49.) The complaint does allege, *inter alia*, that Morrow, in reliance upon the representations of Nationwide, arranged for a new lease to the premises in Bethpage, and arranged to be responsible for other expenses, such as utilities and phones. (Complaint ¶ 23.) Thus, plaintiffs contend

6

that Nationwide never intended to maintain a contract with them; instead, Funaro and Nationwide conspired and planned for Funaro to take over the business even before the contract had been signed, and the contract was simply a delay tactic to allow Funaro to wrongfully interfere with plaintiffs' business relations. (*See* Oral Arg. at 1:47–1:49.) In addition, the complaint alleges that the cancellation of the Agreement (allegedly without the requisite proper notice) was part of the "subterfuge" between Nationwide and Funaro in their "attempt to confiscate Plaintiffs' Nationwide insurance business and turn it over to the Defendant Funaro." (Complaint ¶ 43.)

Given these allegations, the Court concludes that the claim against Funaro is plausibly premised on more than economic self-interest and that, under New York law, plaintiffs could potentially establish that Funaro "acted for a wrongful purpose or used dishonest, unfair, or improper means" by assisting Nationwide in defrauding plaintiffs, and interfering with their business relations. *Catskill Dev.*, 547 F.3d at 132. Moreover, the Court cannot conclude, at this early juncture, that plaintiffs would be unable to prove that any damages were caused by the alleged interference. Therefore, remand is appropriate because plaintiffs may be able to pursue a plausible cause of action against Funaro in state court; even assuming *arguendo* that the possibility of prevailing on this theory of liability is slim, it is certainly not implausible or non-existent. *See Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted.").

In sum, defendants have failed to show that Funaro was fraudulently joined (or was only a nominal or formal party). Accordingly, this Court lacks subject matter jurisdiction over this lawsuit and, pursuant to 28 U.S.C. § 1447(c), plaintiffs' motion to remand the action to state court is granted.

IV. CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. § 1447(c), plaintiffs' motion to remand for lack of federal diversity jurisdiction is granted. Defendants' motion to transfer or, in the alternative, stay or dismiss pending arbitration is denied as moot. The action is hereby remanded to the Supreme Court of the State of New York, County of Nassau.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 16, 2014
       Central Islip, NY

\* \* \*

Plaintiffs are represented by Edward K. Blodnick and Thomas R. Fazio, of Blodnick, Fazio & Associates, P.C., 1325 Franklin Avenue, Suite 375, Garden City, NY 11530. Defendants are represented by Ali Haque, Natalie T. Furniss, and Quintin F. Lindsmith of Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio, 43215, and Kimberly A. O'Toole of d'Arcambal Levine & Ousley, 40 Fulton Street, Suite 1005, New York, NY 10038.